# RESCRIPT OPINIONS.

GING JEW YUNG *vs.* ROMEY REYMONDE & another[1]; MARSHALL F. NEWMAN, trustee,[2] intervener. December 8, 2000. *Assignment. Uniform Commercial Code,* Security interest. *Practice, Civil,* Argument by counsel.

We transferred this case to this court on our own motion to determine who has priority over the settlement proceeds of the defendant's personal injury claim. The intervener contends that, by virtue of either his perfected security interest or assignment of the proceeds of the claim, he has an interest superior to that acquired by the plaintiff's trustee attachment of the proceeds. The intervener and the plaintiff filed cross motions for summary judgment. A judge in the District Court concluded that G. L. c. 106, § 9-104 (*k*), which makes art. 9 of the Uniform Commercial Code inapplicable to "a transfer in whole or in part of any claim arising out of tort," required judgment for the plaintiff. The Appellate Division of the District Court alluded to, but did not decide, the art. 9 issue, concluding that the transaction between the intervener and the defendant constituted a valid common-law assignment of the proceeds that had priority over the plaintiff's trustee attachment. We affirm the judgment of the Appellate Division.

The relevant facts are not in dispute. On October 14, 1994, the intervener, as trustee of the Ronald William Brass Trust, loaned the defendant $32,000, evidenced by a promissory note signed by the defendant. As security for the loan, the defendant executed a financing statement, purporting to grant the intervener a security interest in the proceeds of the defendant's pending personal injury claim against the plaintiff, his former landlord. The financing statement described the security interest, or collateral, as "[t]he proceeds of a certain claim for personal injuries against [the plaintiff] which arose on or about March 15, 1993." The note characterized the security interest as a "pledge." The intervener perfected the security interest by filing the financing statements with the Brookline town clerk and the Commonwealth in October, 1995.

In 1996, the defendant commenced a personal injury action against the plaintiff. The action was settled, in November, 1997, for $50,000. Prior to the distribution of the proceeds (for which the plaintiff's insurer, Pawtucket Mutual Insurance Company [Pawtucket], assumed responsibility), the plaintiff sought, and obtained, a trustee attachment against a portion of the proceeds to satisfy a judgment he had obtained against the defendant in 1993. Both the plaintiff and the intervener claim entitlement to the proceeds held by Pawtucket.

---

[1] Pawtucket Mutual Insurance Company, trustee.

[2] Of the Ronald William Brass Trust.

The Appellate Division acted prudently in not deciding the art. 9 issue because there is no clear majority rule, and, in fact, considerable disagreement among courts and commentators, over whether, under art. 9, a security interest may attach to the proceeds of a tort claim. For general discussion, see *Barclays Business Credit, Inc.* v. *Four Winds Plaza Partnership*, 938 F. Supp. 304, 308-310 (D.V.I. 1996). The Appellate Division decided that the intervener held a valid assignment of the proceeds of the defendant's personal injury claim. In so concluding, the Appellate Division (a) relied on recent decisions of this court indicating that such an assignment might be enforceable, see *New Hampshire Ins. Co.* v. *McCann*, 429 Mass. 202, 209-210 (1999) (legal malpractice claim can be voluntarily assigned); *Kippenhan* v. *Chaulk Servs., Inc.*, 428 Mass. 124, 130 (1998) (remanding case to consider validity of assignment of portion of a recovery in personal injury case to an insurer, noting that "assignment of proceeds but not of a [tort] claim" may be significant, and suggesting that "[t]here may be reasons" why our existing rule, that a claim for personal injury cannot be assigned, "should be modified"); *Saladini* v. *Righellis*, 426 Mass. 231, 234-237 (1997) (holding that common-law doctrines of champerty, maintenance, and barratry are no longer recognized in Massachusetts); and (b) determined that the transaction between the intervener and the defendant, although structured as the creation of a security interest in the proceeds under art. 9, in fact constituted an. assignment. The Appellate Division also determined that, if the assignment was valid, the intervener, by reason of his earlier interest, had priority over the plaintiff's subsequent trustee attachment. See *Commercial Cas. Ins. Co.* v. *Murphy*, 282 Mass. 100, 104 (1933).

When we transferred the case here the plaintiff knew, or should have known, that the issue concerning the validity of an assignment of the proceeds of a personal injury claim was the central point motivating the transfer in light of the cases cited above, especially the *Kippenhan* case, and the reasoning set forth in the Appellate Division's opinion. We are reviewing the judgment of the Appellate Division, not the judgment of the District Court. See, e.g., *Kerins* v. *Lima*, 425 Mass. 108, 109-110 (1997); *Harris* v. *Old King's Highway Regional Historic Dist. Comm'n*, 421 Mass. 612, 618 (1996). As the appellant, the plaintiff has the burden of demonstrating error in the judgment of the Appellate Division and furnishing legal argument that enables us to decide the central issue. The plaintiff has failed in this duty. The plaintiff's brief argues that the intervener does not hold a valid security interest under art. 9 (an issue not decided by the Appellate Division), and makes no argument at all on the merits of the pivotal issue in the case — whether there can be a valid assignment of the proceeds of a personal injury claim.[3] The issue is a difficult one that may raise significant policy considerations affecting the handling of

---

[3]The plaintiff contends only that the ground relied on in the Appellate Division's decision was not raised in the District Court. The Appellate Division properly considered the issue as one raised by the record that required construction of the written instruments, and conflicting priorities, in light of the undisputed facts. See *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 616 (1980). See also *Foley* v. *Lowell Sun Publ. Co.*, 404 Mass. 9, 11 (1989), quoting *Commonwealth* v. *Elder*, 389 Mass. 743, 746 (1983) ("While an appellate court need not consider an issue not addressed by the parties, the court is not prohibited from so doing, and 'may decide cases on issues or theories not raised' ").

personal injury claims, especially those litigated under a contingency fee agreement. The plaintiff also makes no argument that the transaction, denominated as a "pledge," cannot be treated as an assignment.

The plaintiff's failure to make *any* argument on the critical issue does not rise to the level of acceptable appellate argument and, therefore, calls for affirmance of the judgment. See *Adoption of Kimberly*, 414 Mass. 526, 536-537 (1993); *Cameron* v. *Carelli*, 39 Mass. App. Ct. 81, 85-86 (1995); *National Constr. Co.* v. *National Grange Mut. Ins. Co.*, 10 Mass. App. Ct. 38, 42 (1980); *Capodilupo* v. *Petringa*, 5 Mass. App. Ct. 893, 894 (1977). Apart from that issue, nothing else has been shown, either legally or equitably, that calls into question the validity of the transaction. We decide only this case and do so on the narrow procedural ground just stated. We leave for another day, when we have the benefit of proper briefing and argument, whether the issue raised by *Kippenhan* v. *Chaulk Servs., Inc.*, *supra*, should be answered in favor of permitting the assignment of the proceeds of a personal injury claim, and if so, in what particular circumstances, and to whom, such assignments can be made. We express no opinion whether a pledge can constitute an assignment. Finally, we do not intimate that transactions, which may not constitute perfected security interests under art. 9, may be enforceable in every case as an assignment.

*Judgment affirmed.*

*Alan H. Aaron* for the plaintiff.

*Howard I. Rosen* for the intervener.